UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LITTLE ANDERSON, | No. C 12-6055 SI (pr) |
| Plaintiff, | **ORDER OF SERVICE** |
| v. | |
| D. DELEON; et al., | |
| Defendants. | |

## INTRODUCTION

William Little Anderson, formerly an inmate at the Correctional Training Facility in Soledad, filed this *pro se* civil rights action under 42 U.S.C. § 1983. His complaint is now before the court for review under 28 U.S.C. § 1915A.

## BACKGROUND

Anderson alleges the following in his complaint:

On December 1, 2011, correctional officer ("C/O") Deleon ordered Anderson to "strip out" for a search. Anderson stripped down to his underwear/boxers, and was then ordered to take those off. Anderson said "he would comply if taken to an appropriate setting to conduct a full scale unclothed body search outside the view of others. D. Deleon then ordered plaintiff to turn around and put his hands on the wall. Plaintiff complied. D. Deleon unreasonably . . . pushed plaintiff's face into the wall, kicked plaintiff's legs apart and forcibly snatched plaintiff's underwear/boxers off without the use of sanitary gloves leaving abrasions/scratches on the right side of plaintiff's buttocks." Docket # 1-1, pp. 4-5. C/O A Moreno was present and did nothing to stop this.

Anderson filed an inmate appeal (also known as a CDC-602). His inmate appeal characterized the incident as "excessive force, . . . sexual assault; abuse/breach of color of authority; employee misconduct right and respects (sic) of others; . . .employee sexual misconduct." Docket # 1-2, p. 5. An investigation was ordered. The investigation ended on December 30, 2011, with a finding "that both involve[d] staff members did violate CDCR's custom/policy with respect to one or more of the allegations." Docket # 1-1, p. 5.

When Anderson initially notified sergeant Hernandez of the incident on December 1, 2011, Hernandez removed Deleon from his assigned post and sent Anderson back to his cell. On December 3, Anderson was interviewed by lieutenant Sandoval, who was sergeant Hernandez's supervisor. Sandoval instructed Anderson to file an inmate appeal and assured that he wouldn't be placed in administrative segregation ("ad-seg") for reporting the incident.

Notwithstanding the foregoing assurances, on December 5, 2011, lieutenant A. Mendez wrote a CDC-114D lock-up order and had Anderson placed in ad-seg "solely on the predicate for reporting the excessive force sexual assault incident." *Id.* at 6. The CDC-114D states that he was placed in ad-seg because his presence in general population "jeopardized [the] integrity of an investigation of alleged serious misconduct or criminal activity." Docket # 1-4, p. 2. Anderson remained in ad-seg until June 18, 2012. *See id.* at 17.

Anderson's placement and retention in ad-seg were upheld by defendants Benedetti and Spearman during the administrative appeal process. *See* Docket # 1-1, pp. 6-7.

There were various problems in the handling and processing of Anderson's inmate appeal. *See* Docket # 1-1, pp. 6-13. Among other things, prison staff did not note that Anderson's waiver of an interview on December 17 was due to an illness; prison staff denied Anderson's request for a new investigative employee due to his belief that the designated investigative employee had a conflict of interest; prison staff did not mention in a report that Anderson had been interviewed on December 6, 2011; and prison staff cancelled his inmate appeal at the second level for an improper reason.

On December 15, 2011, M.E. Spearman was designated as the chairperson for Anderson's initial ad-seg ICC classification hearing. Docket # 1-1, p. 14. Anderson asked Spearman to

recuse himself "due to retaliatory and conflict of interest issues. Plaintiff's request in the premise was denied." *Id.* Anderson thought Spearman should recuse himself was because Anderson had filed an civil rights complaint against Spearman and other prison officials in 2009 while incarcerated at Pleasant Valley State Prison where Spearman was then employed. *See id.* At the classification hearing, prison officials decided to retain Anderson in ad-seg. He filed an inmate appeal that was eventually denied at every level.

After completion of the staff complaint investigation, Anderson appeared before the ad-seg ICC for program review. The committee, led by Spearman, considered several transfer options – described in a very confusing way in the complaint – and eventually recommended that Anderson be transferred to Pleasant Valley State Prison. *See id.* at 15-16. Anderson claimed he had safety concerns relating to staff members at that prison. *Id.* at 16.

Anderson was subjected to excessive force and inadequate administrative appeals because of the failure to train and failure to adequately staff by defendants Grounds, Spearman, Raso, and Soares. *See id.*

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

A.      The Rough Strip Search

When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated, *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and no lasting physical injury is required to state a cause of action. *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000). Sexual assault, coercion and harassment certainly may violate contemporary standards of decency and cause physical and psychological harm, *see Jordan v. Gardner*, 986 F.2d 1521, 1525-31 (9th Cir. 1993) (en banc); *see also Schwenk*, 204 F.3d at 1196 (sexual assault violates contemporary standards of decency).

The Fourth Amendment applies to the invasion of bodily privacy in prisons and jails. *See Bull v. San Francisco*, 595 F.3d 964, 974-75 (9th Cir. 2010) (en banc); *Michenfelder v. Sumner*, 860 F.2d 328, 333-34 (9th Cir. 1988). Prisoners may be subjected to strip searches and body cavity searches if they are conducted in a reasonable manner. *See Bell v. Wolfish*, 441 U.S. 520, 561 (1979). Egregious conduct during a search might violate the Fourth Amendment. *See Somers v. Thurman*, 109 F.3d 614, 622 n.5 (9th Cir. 1997) ("purposeful subjection of prisoners to verbal assaults during strip searches performed by officials of the other sex serves no administrative purpose and might present a question under the Fourth Amendment").

Giving the *pro se* complaint the liberal construction to which it is entitled, the court is constrained to conclude that it states cognizable § 1983 claims against defendants Deleon and Moreno for violations of Anderson's Fourth and Eighth Amendment rights. Moreno's potential liability rests on his alleged failure to intervene to prevent the violation he saw occurring. *See Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure to intervene to prevent 8th Amendment violation may be basis for liability).

Liberally construed, the complaint also states cognizable § 1983 claim against defendants R.T.C. Grounds, M. E. Spearman, V. Raso and J. Soares for an Eighth Amendment violation based on the same incident. The complaint alleges that the constitutional violations described above were due to these defendants' "direct acts/actions, inactions/omissions in failing to systematically provide adequate/sufficient staffing/training," Docket # 1-1, p. 16; *see also id.* at 1. *See Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012) (supervisor may be liable

4

under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation).

B.  Placement And Retention In Ad-Seg

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Liberally construed, the complaint states a cognizable § 1983 claim against defendant Mendez for retaliation based on the allegation that he put Anderson into ad-seg in response to Anderson's complaint about the rough strip search. Liberally construed, the complaint also states a cognizable § 1983 retaliation claim against defendants Benedetti and Spearman, who allegedly determined that Anderson's placement in ad-seg was warranted.[1]

Anderson appears to contend that there was no legitimate reason for his placement in ad-seg, *see, e.g.,* Docket # 1-1, p. 7 (noting absence of any evidence of a threat to safety and no disciplinary charges filed against him); *id.* at 6 (placement was "solely" based on his report of the staff misconduct in the strip search). Liberally construed, these allegations appear to state a claim that his right to due process was violated because the evidence was insufficient to support his placement and retention in ad-seg. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1104

---

[1] Although the mishandling or denial of an inmate appeal does not violate an inmate's right to due process, as explained in Section C below, prison officials' actions in handling of administrative appeals may give rise to liability for an underlying constitutional violation – i.e., the conduct complained of in the administrative appeal -- where that constitutional violation is ongoing. This is a similar theory to the *Robins v. Meecham* sort of liability that applies to C/O Moreno in Section A above, i.e., a failure to intervene to stop an ongoing violation. Had the ad-seg placement concluded before a prison official considered an inmate appeal about it, he or she would not be liable for the placement and retention in ad-seg because his or her decision could not undo the already-completed violation.

5

(9th Cir. 1986) (some evidence must support the decision to place an inmate in ad-seg), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). The complaint adequately links defendants Mendez, Benedetti and Spearman to this claim.

The complaint does not state a claim for an Eighth Amendment violation based on Anderson's placement and retention in ad-seg. "[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *cf. Neal v. Shimoda*, 131 F.3d 818, 833 (9th Cir. 1997) (contemporary standards of decency are not violated by classification programs which pursue "important and laudable" goals and are instituted under the state's authority to operate correctional facilities). An indeterminate sentence in administrative segregation, without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment. *See Anderson v. County of Kern*, 45 F.3d 1310, 1315-16 (9th Cir. 1995) (no contact with any other inmate in administrative segregation, either for exercise, day room access or otherwise not cruel and unusual punishment).

C.    Inmate Appeals Process

Anderson asserts claims against officials who made errors in processing his inmate appeals and failed to find in his favor on his administrative appeals. The mishandling or failure to grant an inmate's appeal in the prison administrative appeal system does not amount to a due process violation. There is no federal constitutional right to a prison administrative appeal or grievance system for California inmates. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause); *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993). Prison officials are not liable for a due process violation for simply failing to process an appeal properly or failing to find in plaintiff's favor.

The fact that Anderson's inmate appeal was eventually cancelled does not give rise to § 1983 liability at this time. However, the reasons for the cancellation might be relevant if defendants move to dismiss the present complaint for non-exhaustion of administrative remedies. Then, Anderson might be able to show that any non-exhaustion was the fault of prison officials rather than his own.

D.  Transfer To New Prison

Liberally construed, the allegations of the complaint (at Docket # 1-1, pp. 14-15, 17) state a cognizable § 1983 claim against defendant Spearman for retaliation based on his actions in causing Anderson to be recommended for transfer to Pleasant Valley State Prison. *See Rhodes v. Robinson*, 408 F.3d at 567-68. The complaint appears to contend that Spearman wanted Anderson transferred to retaliate for Anderson filing a civil rights complaint against Spearman and others in 2009 and/or for Anderson filing an administrative appeal about his placement in ad-seg after the strip search incident.

Spearman's alleged refusal to recuse himself in response to Anderson's request does not give rise to § 1983 liability. According to the complaint, when Anderson saw that Spearman was to be in charge of a classification hearing, he requested Spearman to recuse himself "due to retaliatory and conflict of interest issues" because Anderson had earlier sued him. Docket # 1-1, p. 14. Spearman's rejection of Anderson's recusal request did not violate any constitutional right Anderson possessed. Although a prison official would have liability for engaging in retaliation, he does not have a duty to step aside whenever a prisoner anticipates that he might in the future engage in retaliation.

The complaint does not state a claim for an Eighth Amendment violation based on the transfer decision. Transfers from one prison to another do not per se violate the Eighth Amendment. *See Sisbarro v. Massachusetts State Penitentiary*, 592 F.2d 1, 4-5 (1st Cir.), *cert. denied*, 444 U.S. 849 (1979). Loss of a prison job, assigning an inmate to a prison far from his family and friends, and the like, which result from interprison transfers, are not constitutionally protected interests. *See Olim v. Wakinekona*, 461 U.S. 238, 247 (1983) (prison transfers

constitutional even where they involve "long distances and an ocean crossing"). Plaintiff's allegation that he had safety concerns if transferred to Pleasant Valley is shown to be mere hyperbole by his inmate appeal on the issue wherein he explained that the basis for his safety concern was that he had filed a staff complaint against prison officials while at Pleasant Valley and that alone "creates a conflict of interest coupled with the staff complaint I filed there places appellant's safety in a compromising position." Docket # 1-18, p. 4; *cf. id.* at 5 (plaintiff wanted to be moved to a prison in Southern California to be near his family). Nothing in the complaint or exhibits thereto suggest that Anderson's safety concern was genuine.[2] Merely having filed a staff complaint does not create a serious risk to an inmate's safety.

**CONCLUSION**

1. The complaint, liberally construed, states cognizable § 1983 claims against defendants D. Deleon, A. Moreno, A. Mendez, D. Benedetti, E. Spearman, R.T.C. Grounds, V. Raso, and J. Soares for violation of plaintiff's federal constitutional rights. State law claims are also stated against these defendants. All other defendants are dismissed.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the complaint and a copy of all the documents in the case file upon the following defendants, who apparently are employed at the Correctional Training Facility in Soledad:

- correctional officer D. Deleon
- correctional officer A. Moreno
- correctional lieutenant A. Mendez
- correctional lieutenant D. Benedetti
- chief deputy warden E. Spearman
- warden R.T.C. Grounds

---

[2]Indeed, Anderson's employment of the same reasoning three times in his complaint shows how easy it would be for a prisoner – especially a disputatious one -- to manipulate staff and housing with the reasoning that a prisoner's speculation that past adversarial positions will lead to future mistreatment by prison officials warrants acceding to his present demands. *See, e.g.,* Docket # 1-1, p. 9 (plaintiff asked that Benedetti be replaced as his investigative employee because plaintiff had filed an inmate appeal against her in the past); *id.* at 14 (plaintiff asked that Spearman recuse himself because plaintiff had filed a civil rights action against him in the past); *id.* at 15-16 (plaintiff asked not to be transferred to Pleasant Valley because of past complaint against staff there).

8

- chief deputy warden V. Raso
- associate warden J. Soares

3.  In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a.  No later than **June 7, 2013**, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the court prior to the date the motion is due. If defendants file a motion for summary judgment, defendants must provide to plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012). If defendants file a motion to dismiss for non-exhaustion of administrative remedies, defendants must provide to plaintiff a notice regarding motions to dismiss for non-exhaustion procedures at the time they file such a motion. *See Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012).

b.  Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **July 5, 2013**. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment. Plaintiff also must bear in mind the notice and warning regarding motions to dismiss for non-exhaustion provided later in this order as he prepares his opposition to any motion to dismiss.

c.  If defendants wish to file a reply brief, the reply brief must be filed and served no later than **July 19, 2013**.

4.  Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment and motions to dismiss for non-exhaustion of administrative remedies:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that

9

is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

The defendants may file a motion to dismiss for failure to exhaust administrative remedies instead of, or in addition to, a motion for summary judgment. A motion to dismiss for failure to exhaust administrative remedies is similar to a motion for summary judgment in that the court will consider materials beyond the pleadings. You have the right to present any evidence you may have which tends to show that you did exhaust your administrative remedies or were excused from doing so. The evidence may be in the form of declarations (that is, statements of fact signed under penalty of perjury) or authenticated documents (that is, documents accompanied by a declaration showing where they came from and why they are authentic), or discovery documents such as answers to interrogatories or depositions. In considering a motion to dismiss for failure to exhaust, the court can decide disputed issues of fact with regard to this portion of the case. If defendants file a motion to dismiss and it is granted, your case will be dismissed and there will be no trial. *See generally Stratton v. Buck*, 697 F.3d at 1008-09.

5. All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

6. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

8. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

IT IS SO ORDERED.

Dated: March 8, 2013

_____
SUSAN ILLSTON
United States District Judge