1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
**For the Northern District of California**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM LITTLE ANDERSON,

        Plaintiff,

        v.

D. DELEON; et al.,

        Defendants.

_____/

No. C 12-6055 SI (pr)

**ORDER (1) GRANTING PARTIAL
SUMMARY JUDGMENT;
(2) GRANTING MOTION TO
DISMISS; AND (3) REQUIRING
AMENDED COMPLAINT**

**INTRODUCTION**

    William Little Anderson, formerly an inmate at the Correctional Training Facility in Soledad, filed this *pro se* civil rights action under 42 U.S.C. § 1983. Defendants now move for summary judgment for non-exhaustion of administrative remedies and to dismiss the complaint for failure to state a claim upon which relief may be granted. Anderson opposes the motion. For the reasons discussed below, defendants' motion will be granted.

**BACKGROUND**

A.    <u>Allegations In The Complaint</u>

    Anderson alleges the following in his complaint:

    On December 1, 2011, correctional officer ("C/O") Deleon ordered Anderson to "strip out" for a search. Anderson stripped down to his underwear/boxers, and was then ordered to take those off. Anderson said "he would comply if taken to an appropriate setting to conduct a full scale unclothed body search outside the view of others. D. Deleon then ordered plaintiff to turn around and put his hands on the wall. Plaintiff complied. D. Deleon unreasonably . . . pushed plaintiff's face into the wall, kicked plaintiff's legs apart and forcibly snatched plaintiff's

underwear/boxers off without the use of sanitary gloves leaving abrasions/scratches on the right side of plaintiff's buttocks." Docket # 1-1, pp. 4-5. C/O A. Moreno was present and did nothing to stop this.

Anderson filed an inmate appeal (also known as a CDC-602). His inmate appeal characterized the incident as "excessive force; . . . sexual assault; abuse/breach of color of authority; employee misconduct right and respects (sic) of others; . . . employee sexual misconduct." Docket # 1-2, p. 5. An investigation was ordered. The investigation ended on December 30, 2011, with a finding "that both involve[d] staff members did violate CDCR's custom/policy with respect to one or more of the allegations." Docket # 1-1, p. 5.[1]

When Anderson initially notified sergeant Hernandez of the incident on December 1, 2011, Hernandez removed Deleon from his assigned post and sent Anderson back to his cell. On December 3, Anderson was interviewed by lieutenant Sandoval, who was sergeant Hernandez's supervisor. Sandoval instructed Anderson to file an inmate appeal and assured that he wouldn't be placed in administrative segregation ("ad-seg") for reporting the incident.

Notwithstanding the foregoing assurances, on December 5, 2011, lieutenant A. Mendez wrote a CDC-114D administrative segregation placement notice and had Anderson placed in ad-seg "solely on the predicate for reporting the excessive force sexual assault incident." *Id.* at 6. The CDC-114D stated that he was placed in ad-seg because his presence in general population "jeopardized [the] integrity of an investigation of alleged serious misconduct or criminal activity." Docket # 1-4, p. 2. Anderson remained in ad-seg until June 18, 2012. *See id.* at 17.

Anderson's placement and retention in ad-seg were upheld by defendants Benedetti and Spearman during the administrative appeal process. *See* Docket # 1-1, pp. 6-7.

On December 15, 2011, M.E. Spearman was designated as the chairperson for Anderson's initial ad-seg ICC classification hearing. Docket # 1-1, p. 14. Anderson asked Spearman to

---

[1]Anderson later provided the report with his opposition to the motion to dismiss. The investigative report's findings of staff misconduct were quite limited, however, and sustained the charge of staff misconduct in only two small respects, i.e., the C/O should not have used profanity and that the non-urgent search should have been conducted in an area that allowed the inmate some measure of dignity and self-respect. Docket #35-23 at 6. The report concluded that the charges of sexual misconduct and excessive force were "not sustained." *Id.*

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

recuse himself "due to retaliatory and conflict of interest issues. Plaintiff's request in the premise was denied." *Id.* Anderson thought Spearman should recuse himself because Anderson had filed a civil rights complaint against Spearman and other prison officials in 2009 while incarcerated at Pleasant Valley State Prison where Spearman was then employed. *See id.* At the classification hearing, prison officials decided to retain Anderson in ad-seg.

After completion of the staff complaint investigation, Anderson appeared before the ad-seg ICC for program review. The committee, led by Spearman, considered several transfer options – described in a very confusing way in the complaint – and eventually recommended that Anderson be transferred to Pleasant Valley State Prison. *See id.* at 15-16. Anderson claimed he had safety concerns relating to staff members at that prison. *Id.* at 16.

Anderson was subjected to excessive force and inadequate administrative appeals because of the failure to train and failure to adequately staff by defendants Grounds, Spearman, Raso, and Soares. *See id.*

B.    Exhaustion Of Administrative Remedies For The Strip Search

The following facts are undisputed unless otherwise noted:

Anderson had filed many inmate appeals before the strip search. *See* Docket # 24 at 5-7.

On December 3, 2011, two days after the strip search, Anderson filed an inmate appeal about the search. The inmate appeal was assigned appeal number CTF-11-02106.

Anderson was interviewed by correctional lieutenant Benedetti on December 6, 2011. He told Benedetti that he had filed an inmate appeal against her on another matter and was displeased with her being assigned as his investigative employee on this matter. Docket # 1-1 at 9. He states that he did, however, participate and cooperate in that interview. *Id.; cf.* Docket # 1-13 at 6 (August 13, 2012 inmate appeal in which Anderson wrote that the lieutenant "inquired what happened and did appellant have names of any witnesses. Appellant said, 'no' and that the facts of the incident are fully explained in the Staff's Complaint").

Prison officials tried to summon Anderson for a second interview on December 17, 2011, but he would not exit his cell to be interviewed. (This is discussed in much more detail below.)

1    Anderson's inmate appeal was partially granted at the first level of review on December

2   30, 2011.  The decision stated that the matter had been processed as a staff complaint, a

3   confidential inquiry had been conducted and had concluded that staff did violate CDCR policy

4   with respect to one or more of the issues appealed.  Docket # 1-3 at 2-3.  The first level decision

5   noted that Anderson had refused to participate in an interview during the investigation of that

6   appeal.  *Id.* at 2.  The decision also stated that it did not limit or restrict the availability of further

7   review, and that an inmate wishing to appeal the decision had to submit the appeal through all

8   levels of appeal review through the Director's level of review to exhaust administrative remedies.

9   *Id.* at 3.

10    Anderson appealed to the second level.  The appeal was cancelled at the second level of

11   review because of Anderson's refusal to interview on December 17 during the first level

12   investigation.  Docket # 1-8 at 2 (citing Cal. Code Regs. tit. 15, § 3084.6(a)(5) (erroneous

13   acceptance of inmate appeal at a lower level does not preclude cancellation at the next level of

14   review) and § 3084.6(c)(8) (appeal may be cancelled for refusal to be interviewed).

15    Anderson attempted to submit the cancelled appeal (i.e., CTF-11-02106) for third level

16   review several times, and it was screened out because he was not authorized to do so.

17   *See* Lozano Decl., ¶ 7.  Anderson also filed inmate appeal number CTF-12-00693 to appeal the

18   cancellation of inmate appeal CTF-11-02106.  Lozano Decl.,¶ 8 and Ex. B.  Inmate appeal

19   number CTF-12-00693 was denied at the third level of review on October 19, 2012, with a

20   determination that he had not presented any evidence to support his assertion that the appeal had

21   been cancelled inappropriately.

22

23        1.   The Interview That Did Not Take Place on December 17, 2011

24    The December 17 non-interview is critical to the present motion.

25    Correctional sergeant W. Wright wrote an informational chrono (i.e., a memorandum)

26   dated December 17, 2011 in which he stated that he approached Anderson's cell "and informed

27   Anderson that Lt. Benedetti had arrived and that he was needed for an interview.  The inmate

28   refused to come out of the cell.  I then informed Anderson that the interview was regarding a

4

staff complaint that he had filed, he again stated that he was refusing to come out of his housing to interview with Lt. Benedetti."  Docket # 1-7 at 2.

On December 18, 2011 (i.e., the day after the interview did not take place), Anderson wrote a letter to the facility captain to request that someone other than lieutenant Benedetti be appointed to investigate his allegations of staff misconduct in the strip search because, in Anderson's opinion, a conflict of interest existed between him and Benedetti due to her earlier presiding over an unrelated disciplinary hearing.  Docket # 1-9 at 2-3 (Ex. H to Complaint). Anderson did not mention in that letter that he had the flu as a reason for his non-participation in the interview.

On January 23, 2012, when he wrote his second level appeal, Anderson did not object to the statement in the first level decision that he had "refused to participate in an interview" conducted by lieutenant Benedetti on December 17.  *See* Docket # 1-2 at 6; Docket # 1-3 at 2.

On March 19, 2012, five days after the inmate appeal had been cancelled, Anderson filed a separate inmate appeal (i.e., CTF-12-00693) in which he urged that his inmate appeal had been cancelled improperly because (a) no section in the regulation permitted cancellation of appeals for refusal to interview or cooperate and (b) the second level could not reject for refusal-to-interview when the first level had not rejected for that reason.  Docket # 24 at 13.  He did not mention that he had the flu when summoned for the interview on December 17.

On April 5, 2012, Anderson attempted to appeal the cancellation and wrote that, despite the fact that he had told lieutenant Benedetti on December 6, 2011 that "he had a problem with her investigating the matter she still endeavored to interview me a 2nd time at which time I simply waived the interview and thereafter expedited a formal request to remove her on the predicate a conflict of interest existed."  Docket # 1-2 at 6.  He did not mention the flu as a reason why he was not interviewed on December 17, 2011.

On April 13, 2012, Anderson wrote an inmate appeal in which he urged that he had "waived the interview" and suggested that only one face-to-face interview was needed.  Docket # 24 at 35.

Anderson's first written mention of the flu occurred on August 13, 2012, in the third level

appeal of CTF-12-00693, when he wrote that he told sergeant Wright that he "waived the second interview" because he was "experiencing flu symptoms and not feeling well therefrom." Docket # 24 at 14; *see also* Docket # 1-1 at 7-8 (verified complaint stating that he had the flu and told Wright "he was not feeling well and to tell Lt. Benedetti that he waived the interview with her").

Anderson did not seek or receive any treatment for the flu. *See* Docket 37-1 at 5. He also was well enough to attend the committee hearing on December 15, to write a letter protesting Benedetti on December 18, and to write an inmate appeal on December 22, 2011. *See* Docket # 1-5 at 2; Docket # 1-9 at 2; Docket # 1-9 at 7.

At his deposition, Anderson articulated a new reason he didn't want to leave his cell: "I didn't want to get up and be chained up, because in the hole, you have to put on chains and all that. I didn't even want to be bothered with all that." Docket # 37-1 at 5. And in his opposition to defendants' motion, he argued for the first time that he had requested that the interview be rescheduled, *see* Docket # 34 at 15, but that is inconsistent with his evidence that he asked to "waive" the interview.

## DISCUSSION

A.    Motion for Summary Judgment

   1.    Conversion of The Motion To Dismiss To A Motion For Summary Judgment

Until recently, the affirmative defense of non-exhaustion of administrative remedies had to be raised in an unenumerated Rule 12(b) motion under the then-controlling precedent of *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). *Wyatt* was overruled by *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014), earlier this year. *Albino* discarded the unenumerated Rule 12(b) motion procedure and held that non-exhaustion had to be raised by a motion for summary judgment. *Albino*, 747 F.3d at 1168.

Defendants had filed an unenumerated Rule 12(b) motion to dismiss for non-exhaustion at a time when *Wyatt* dictated that procedure. After the motion was fully briefed, *Albino* was decided. The parties then stipulated to convert the unenumerated Rule 12(b) motion to a Rule 56 motion for summary judgment. Docket # 43. On the day they filed the stipulation,

**United States District Court**
For the Northern District of California

defendants filed and served a *Rand* notice regarding the procedures for and significance of a summary judgment motion.  Anderson had been released from custody before defendants filed their motion to dismiss that was later converted to a motion for summary judgment.

The threshold question is whether there was a notice problem for the motion.  Due to his non-prisoner status at the time the motion was filed, Anderson was not entitled to the *Rand* notice regarding summary judgment because the *Rand* notice requirement has not been extended to non-prisoner *pro se* litigants.  *See Rand v. Rowland*, 154 F.3d 952, 960 (9th Cir. 1998 (en banc); *Jacobsen v. Riller*, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986).  Anderson also stipulated to the conversion of the motion to dismiss into a motion for summary judgment. Further, the order of service provided notice to Anderson about both the enumerated Rule 12(b) motion procedure as well as the motion for summary judgment procedure, and informed Anderson that his case would be dismissed and no trial would occur if either was granted. Docket # 6 at 9-10.   For these reasons, it is permissible to consider the motion for summary judgment that started out life as a Rule 12(b) motion to dismiss.

### 2.    Legal Standard for Summary Judgment

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Generally, when defendants move for summary judgment on an affirmative defense on which they bear the burden of proof at trial, they must come forward with evidence which would entitle them to a directed verdict if the evidence went uncontroverted at trial.  *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).  The failure to exhaust administrative remedies is

an affirmative defense that must now be raised in a motion for summary judgment. *See Albino*, 747 F.3d at 1166.  On a motion for summary judgment for non-exhaustion, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172.  If defendants carry that burden, the prisoner has the burden of production.  "That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of proof remains with defendants, however. *Id.*  "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

A verified complaint may be used as an opposing affidavit under Federal Rule of Civil Procedure 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn. 10-11 (9th Cir. 1995).  Anderson's complaint is verified and therefore may be considered as evidence.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence on a disputed material fact.  *See T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631.

3.      Administrative Remedies Were Not Exhausted As To The Strip Search

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  *Id.* (citation omitted).  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages,

exhaustion is a prerequisite to suit.  *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The State of California provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  In order to exhaust available administrative remedies within this system, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the California Department of Corrections and Rehabilitation or his designee.  *Id.* § 3084.1(b), § 3084.7(d)(3); *see Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006).

An inmate appeal may be cancelled if the inmate "refuses to be interviewed or to cooperate with the reviewer."  Cal. Code Regs. tit. 15, § 3084.6(c)(8).  A cancellation decision does not exhaust administrative remedies.  *Id.* § 3084.1(b).  An inmate can appeal that cancellation decision separately by appealing the application of § 3084.6(c) to his appeal; if he prevails on that separate appeal, the cancelled appeal later can be considered at the discretion of the appeals coordinator or the third level appeals chief.  *Id.* § 3084.6(a)(3) and § 3084.6(e).[2]

Although Anderson is now out of custody, the exhaustion requirement in § 1997e(a) applies because he was a prisoner at the time he filed this action, and the statute plainly requires exhaustion by a "prisoner."  Anderson's release from custody after he filed this action does not excuse the need to exhaust before filing this action.  *Cox v. Mayer*, 332 F.3d 422, 424-28 (6th Cir. 2003); *Seward v. Persson*, 2014 WL 494879, *2 (D. Or. 2014) ("the PLRA exhaustion requirement is applicable to all persons who are incarcerated at the time they file their civil

---

[2]Defendants and Anderson erroneously argue that the regulations were changed with regard to cancellation of appeals, and then dispute whether the allegedly amended regulations should apply.  The most recent amendments to the three cited regulations – 15 Cal. Code Regs. §§ 3084.3, 3084.4, and 3084.6 – occurred more than ten months before the strip search. Specifically, these three sections were amended in 1997, and again in 2010 (with the 2010 amendments becoming operative on January 28, 2011), but have not been amended since then. *See* 15 Cal. Code Regs. § 3084.3 (history notes 6-10); § 3084.4 (history notes 4-8), § 3084.6 (history notes 4-8).  Anderson had the current version of the relevant regulations while he was engaged in the inmate appeal process, as can be determined from his March 19, 2012 inmate appeal citing § 3084.6(e) – a subsection that did not exist until the 2010 amendments. *See* Docket # 1-13 at 5.

United States District Court
For the Northern District of California

actions even if they were released from custody prior to resolution of their claims"); *cf. Talamantes v. Leyva*, 575 F.3d 1021, 1023-24 (9th Cir. 2009) (plaintiff who had been released from custody a year before he filed the action was not required to comply with the exhaustion requirement). A plaintiff who was in prison and had not exhausted by the time he filed the action, but was later released from prison, can file a new action and thereby avoid the exhaustion requirement because it only applies to prisoners. *See Kaba v. Stepp*, 458 F.3d 678, 680 (7th Cir. 2006); *Cox*, 332 F.3d at 426-27.

Defendants carry their burden to demonstrate that there were available administrative remedies for Anderson, and that Anderson did not exhaust those available remedies. The undisputed evidence shows that California provides an administrative remedies system for California prisoners to complain about their conditions, that Anderson had used that California inmate appeal system many times in the past, and that Anderson used it to complain about the strip search. Defendants also present undisputed evidence that Anderson did not receive the necessary third level decision on his inmate appeal because it was cancelled at the second level due to Anderson's failure to interview on December 17, 2011. And defendants show that a state regulation, i.e., § 3084.6(c)(8), allowed prison officials to cancel an inmate appeal due to an inmate's refusal to interview, even when that refusal occurred during a lower level review in the inmate appeal process. Defendants further show that, under § 3084.1(b), the inmate appeal cancelled at the second level did not suffice to exhaust administrative remedies.

Once defendants meet their initial burden, the burden shifts to Anderson to come forward with evidence showing that something in his particular case made the existing administrative remedies effectively unavailable to him. *See Albino*, 747 F.3d at 1172. Anderson tries to meet that burden by attacking the cancellation of his inmate appeal. The propriety of the cancellation matters because, if prison officials improperly screened out or cancelled his appeal, he could not properly complete the grievance process and administrative remedies would be effectively unavailable. *See Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010). To satisfy this exception to exhaustion, the prisoner must show: "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to

United States District Court
For the Northern District of California

1  exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened

2  his grievance or grievances for reasons inconsistent with or unsupported by applicable

3  regulations." *Id.* at 823-24.

4        Anderson does not meet his burden to show that administrative remedies were effectively

5  unavailable.  No reasonable trier of fact could find that prison officials cancelled Anderson's

6  inmate appeal for reasons inconsistent with or unsupported by applicable regulations.  The

7  regulation plainly allows an inmate appeal to be cancelled for refusal to interview, and does not

8  provide an exception to that rule for an inmate who does not feel well.  Anderson urges that his

9  failure to be interviewed on December 17 was due to him having the flu.  Anderson's argument

10  that he had the flu borders on the non-credible as he waited so long to mention the flu as an

11  excuse in his writings to prison officials about the refusal to interview and instead focused on

12  a conflict of interest he claimed to have with lieutenant Benedetti and on his alleged right to be

13  interviewed only once.[3]  Nonetheless, the court will assume for purposes of deciding the

14  summary judgment motion that Anderson actually had the flu and mentioned it to sergeant

15  Wright as the reason he declined to be interviewed.  Even accepting that he had the flu and told

16  Wright of it, there is no evidence that Anderson requested that the interview be rescheduled

17  instead of cancelled; to the contrary, his evidence is that he told Wright he had the flu and

18  therefore "waived" the interview with lieutenant Benedetti.  The regulations do not give an

19  inmate an option to "waive" an interview; regardless of whether he calls it a refusal or a waiver

20  or something else, it amounted to a refusal to be interviewed that could result in a cancellation

21  of the inmate appeal.  The cancellation of his inmate appeal at the second level due to Anderson's

22  refusal to be interviewed was "clearly articulated in the cancellation notice," as required by §

23  3084.6(c)(8)(A).  The cancellation of his inmate appeal was not improper, and the subsequent

24  screening out of the appeal at the third level based on the earlier cancellation was not improper.

25

26  ─────────────────

27      [3]Anderson did not mention the flu he supposedly had on December 17 in his December 18, 2011 letter, or in his inmate appeals written on January 23, March 19, April 5, or April 13, 2012.  The flu was first mentioned in a writing dated August 13, 2012.  Anderson also did not

28  seek treatment for the flu.  And he was well enough to attend a committee hearing the day before, and to write a letter the day after, prison officials tried to interview him.

1

2    Anderson argues that the § 3084.7(e) did not require multiple interviews. True, but it also

3    did not prohibit multiple interviews. *See* Cal. Code Regs. § 3084.7(e) ("At least one face-to-face

4    interview shall be conducted . . . ").  Prison officials were not in violation of the regulations by

5    requiring a second interview of Anderson by the investigator reviewing his staff complaint.  Not

6    only were multiple interviews generally permitted, the record suggests a specific need for one

7    here. Anderson's inmate appeal had leveled a very serious charge as he had alleged that a

8    correctional officer had sexually assaulted him.  Also, even by his own account, Anderson

9    provided little information in the first interview: when Benedetti asked about the incident,

10   Anderson directed her to his staff complaint and did not further explain what happened or

11   provide names of witnesses.  *See* Docket # 1-13 at 6.  The fact that two other prison officials

12   had interviewed him before and after he filed his inmate appeal did not make multiple interviews

13   by the assigned investigator improper.

14        Anderson appealed the cancellation of his original inmate appeal and received a third

15   level denial of the appeal of the cancellation decision.  That third level denial of appeal CTF-12-

16   00693 did not suffice to exhaust administrative remedies for the strip search incident that was

17   the subject of the cancelled appeal CTF-11-02106.  Also, the denial of his appeal of the

18   cancellation decision cannot be attributed just to sergeant Wright not writing on the

19   informational chrono that Anderson had the flu, as Anderson failed to mention the flu as an

20   excuse in his first level appeal or his second level appeal in CTF-12-00693.  The third level

21   denial of the cancellation appeal did not render administrative remedies unavailable to Anderson.

22   or suffice to exhaust administrative remedies regarding the strip search.  "Proper exhaustion

23   demands compliance with an agency's deadlines and other critical procedural rules because no

24   adjudicative system can function effectively without imposing some orderly structure on the

25   course of its proceedings." *Ngo*, 548 U.S. at 90-91.

26        Bearing in mind that defendants have the ultimate burden of proof on the defense and

27   viewing the evidence in the light most favorable to Anderson, the court concludes that

28   defendants are entitled to judgment as a matter of law on the affirmative defense that Anderson

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  failed to exhaust administrative remedies on the strip search claims.  The claims based on the

2  strip search incident therefore are dismissed without prejudice to Anderson filing a new action

3  alleging those claims.  The court expresses no opinion about whether such claims would be

4  timely under the applicable statutes of limitations.

6  B.      Motion To Dismiss

7          Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the

8  ground that there is a "failure to state a claim upon which relief may be granted."   A motion to

9  dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that

10  is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating

11  *Conley v. Gibson*, 355 U.S. 41 (1957)).  The court "must accept as true all of the factual

12  allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must

13  construe *pro se* pleadings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010).  The

14  court need not accept as true allegations that are legal conclusions, unwarranted deductions of

15  fact or unreasonable inferences.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988,

16  *amended by* 275 F.3d 1187 (9th Cir. 2001).  In considering a motion to dismiss, the court may

17  take judicial notice of matters of public record outside the pleadings.  *See MGIC Indem. Corp.*

18  *v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

20          1.      Due Process Claims

21          Defendants contend in their Rule 12(b)(6) motion that the complaint fails to state a due

22  process claim based on Anderson's placement and retention in ad-seg because (a) he failed to

23  allege that an interest of real substance was implicated and (2) he received the procedural

24  protections he was due.

25          The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects

26  individuals against governmental deprivations of life, liberty or property without due process of

27  law.  Interests that are procedurally protected by the Due Process Clause may arise from two

28  sources: the Due Process Clause itself and laws of the states.  *See Meachum v. Fano*, 427 U.S.

215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that the liberty in question is one of "real substance." *See Sandin*, 515 U.S. at 477-87. An interest of "real substance" will generally be limited to freedom from restraint that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." *Id.* at 484, 487.

When prison officials initially determine whether a prisoner is to be segregated for administrative reasons and a liberty interest of real substance is implicated, due process requires that there be an evidentiary basis for the prison officials' decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Toussaint v. McCarthy*, 801 F.2d 1080, 1104-05 (9th Cir. 1986).[4] This standard is met if there is "some evidence" from which the conclusion of the administrative tribunal could be deduced. *Superintendent v. Hill*, 472 U.S. at 455; *Toussaint*, 801 F.2d at 1105. Following placement in administrative segregation, prison officials must engage in some sort of periodic review of the inmate's confinement. *See Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983).

Anderson's complaint fails to state a claim for a due process violation based on his placement and retention in ad-seg. First, the complaint is deficient in that Anderson does not allege facts showing that an interest of real substance was implicated by his placement and

---

[4]Due process also requires that prison officials hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons segregation is being considered, and allow the prisoner to present his views. *Toussaint*, 801 F.2d at 1100. Neither Anderson nor defendants suggest these other procedural protections are at issue in this case.

retention in ad-seg.  He does not describe any conditions that existed for ad-seg prisoners that showed them to be an "atypical and significant hardship" compared to the ordinary incidents of prison life.  *Sandin*, 515 U.S. at 484.  Mere placement in ad-seg is not an atypical and significant hardship if the conditions there are essentially the same as general population conditions. Anderson also does not allege any facts showing that the placement in ad-seg would inevitably affect the duration of his sentence. In his amended complaint, Anderson must allege facts showing that the conditions of ad-seg were such that his placement and retention there implicated a liberty interest of real substance.

Second, the complaint does not adequately allege that there was not sufficient evidence to support the initial decision to place Anderson in ad-seg.  Anderson's allegations and the CDC-114 ad-seg placement notice form attached to his complaint show that he had made a very serious allegation of excessive force and sexual assault by a staff member and was initially placed in ad-seg because of the pending formal investigation into his allegations.  *See* Docket # 1-1 at 6-7; Docket # 1-4 at 2.  Anderson's characterization of the strip search incident as a sexual assault likely caused it to be taken far more seriously than would have been the case if the prison guard had, for example, yanked something out of Anderson's hand and scratched his wrist in doing so.  The more serious consideration was consistent with prison officials' legal obligations regarding sexual abuse in prison facilities.  *See* Cal. Penal Code §§ 2635-2643; Cal. Code Regs. tit. 15, § 3401.5; CDCR Operations Manual, Article 44 ("Prison Rape Elimination Policy").  Anderson argues that the placement was unsupported because "staff had not received any confidential data indicating that plaintiff or the involved staff members' safety or institutional security had been threatened to justify his placement in administrative segregation." Docket # 34 at 7 (errors in source); *see also* Docket # 1-1 at 7.[5]  Prison officials need not wait

_____

[5]Anderson also argues that the sequence of events shows that his placement was a due process violation.  Specifically, he argues that, since his ad-seg placement did not occur until December 5, several days after the December 1 search, and followed his December 3 written inmate appeal rather than his earlier oral complaints that started on the day of the strip search, his placement in ad-seg was improper and violated due process.  These allegations do not show a due process violation or suggest the absence of some evidence to support his placement in ad-seg during the investigation.

for a specific threat to be made, an act of violence to be committed, or an investigation to be interfered with before they may place someone in administrative segregation. Section 3335(a) of the regulations and existing cases recognize the propriety of using ad-seg placement as a prophylactic measure and the importance of deferring to prison officials' judgment on such placements. Anderson's placement in ad-seg was the type of placement contemplated in *Hewitt v. Helms*, 459 U.S. at 473-74, where the Court recognized the occasional need to segregate inmates during investigations in prison and recognized that numerous factors may inform prison officials' determinations as to the severity of a security threat. "In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards *even if he himself has committed no misconduct*; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents. The judgment of prison officials in this context, like that of those making parole decisions, turns largely on 'purely subjective evaluations and on predictions of future behavior.'" *Id.* at 474 (emphasis added); *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."); *Griffin v. Gomez*, 741 F.3d 10, 21 (9th Cir. 2014) ("federal courts should exercise restraint when reviewing management decisions taken by prison administrators to secure the safety of prisoners and state prison personnel").

The preceding paragraph has discussed Anderson's initial placement in ad-seg but not his retention in ad-seg because the facts are somewhat different. The complaint pleads facts – i.e., that Anderson filed a staff misconduct complaint that caused an investigation to be started and prompted his placement in ad-seg during the investigation – that are incompatible with a claim that there was not some evidence to support the initial decision to place him in ad-seg. However, the complaint does not plead facts incompatible with a claim that there was not some evidence to support his continued retention in ad-seg after the investigation into his staff misconduct allegations concluded. Defendants state that the reason for Anderson's continued retention in ad-seg can be found in the program review document from February 9, 2012. *See* Docket # 1-15

United States District Court
For the Northern District of California

at 2.  Although the document is attached to the complaint, Anderson does not adopt it or allege facts showing it to be true.  *See Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998) (declining to apply blanket rule that document attached is adopted *in toto*  "in the case of letters written by the opposition for what could be self-serving purposes").  On this Rule 12(b)(6) challenge to the pleading, the document does not help defendants to show that a due process claim is not stated.  (Of course, the document can be considered if the case reaches the summary judgment stage because the court can go beyond the pleadings at that stage.)  Notwithstanding the adequacy of the insufficient-evidence portion of the due process claim regarding his retention in ad-seg, Anderson is cautioned that he must allege that element again in his amended complaint *and* must allege facts showing that his retention implicated an interest of real substance to state a due process claim.

2.     Retaliation

The complaint asserts two different retaliation claims.  In the first retaliation claim, Anderson alleges that lieutenant Mendez put him into ad-seg in retaliation for Anderson's complaint about the strip search and that Benedetti and Spearman approved the decision.  In a separate retaliation claim, Anderson alleges that defendant Spearman caused him (Anderson) to be recommended for transfer to Pleasant Valley State Prison, apparently to retaliate for Anderson filing a civil rights complaint against Spearman and others in 2009 and/or for Anderson filing an administrative appeal about his placement in ad-seg after the strip search.

Defendants contend that the retaliation claims are deficient because Anderson does not allege the necessary element that defendants' actions "did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).[6]  They argue that Anderson fails to allege facts indicating that the decision to place Anderson in ad-seg did not

---

[6]"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

United States District Court
For the Northern District of California

1    reasonably advance legitimate penological goals.  They also argue that Anderson has not alleged

2    any facts indicating that there were no legitimate penological goals for the transfer.

3           The complaint fails to state a claim for retaliation with regard to Anderson's placement

4    in ad-seg because Anderson has not alleged facts showing the absence of a legitimate

5    penological purpose for the decision.  As explained in the due process analysis above, Anderson

6    pleads facts and attaches documentation showing the existence of a legitimate penological

7    purpose for his placement in ad-seg.  Anderson had filed a serious staff misconduct complaint

8    and was placed in ad-seg during its investigation.  *See* Docket # 1-4 at 2 (CDC-114 listing reason

9    for ad-seg placement as "jeopardized integrity of an investigation of alleged serious misconduct

10   or criminal activity.")   That kind of prophylactic placement in ad-seg serves a legitimate

11   penological goal, as recognized in the regulations, Cal. Code. Regs. tit. 15, § 3335(a), and cases,

12   *see, e.g., Hewitt v. Helms*, 459 U.S. at 473-74.  Anderson makes much of the fact that the ad-seg

13   placement did not occur until he followed up his oral complaint with a written staff complaint

14   (*see* footnote 5, above), but that does not show the placement to be devoid of a legitimate

15   penological purpose.

16          The complaint fails to state a claim for retaliation with regard to Spearman causing him

17   to be recommended for a transfer because it does not allege the absence of a legitimate

18   penological goal for Spearman's actions.  Anderson alleges that Spearman recommended his

19   transfer to Pleasant Valley State Prison "based solely on a self-serving belief that staff members

20   safety would be compromised if plaintiff were/was returned to general population at CTF-

21   Central."  Docket # 1-1 at 15.  That allegation shows the presence of a legitimate penological

22   goal rather than the absence of one.  Even if Spearman was incorrect, if Spearman actually

23   believed that staff members' safety would be compromised if Anderson returned to the general

24   population, his transfer recommendation would have been for a legitimate penological purpose

25   of protecting staff rather than for retaliatory purposes.  *Cf. Wood v. Beauclair*, 692 F.3d 1041,

26   1051 (9th Cir. 2012) (rejecting retaliatory transfer claim because transfer of prisoner to another

27   prison to distance him from two female officers who were fraternizing with him contrary to

28   prison policy reasonably advanced a legitimate correctional goal).

18

United States District Court
For the Northern District of California

3.    <u>State Law Claims</u>

Defendants argue that Anderson's state law claims should be dismissed because he fails to allege compliance with the claim presentation requirement of the California Government Claims Act, which requires presentation of the claim to the California Victim Compensation and Government Claims Board ("Board").  *See* Cal. Gov't Code §§  905.2, 911.2, 945.4, 950.2. Anderson had to present his personal injury tort claim against a state employee or entity to the Board within six months of the accrual of the cause of action, and had to present any claim relating to any other cause of action within a year after the accrual of the cause of action. *See* Cal. Gov't Code § 911.2.  Timely claim presentation is "a condition precedent to plaintiff's maintaining an action against [a state employee or entity] defendant."  *California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1240 (Cal. 2004).  The failure to include the necessary allegations about claim presentation makes the complaint subject to attack for failure to state a cause of action.  *Id.*

Anderson argues that the wrongful cancellation of his inmate appeal excused his non-compliance with his obligation to present a claim to the Board.  This argument is unpersuasive. "[T]he prison's inmate appeals process and the Government Claims Act process are separate processes and there is no support for a finding that the allegedly improper cancellation of Plaintiff's inmate appeal had any effect whatsoever on his ability to timely present his Government Claims Act claim."  *Martinez v. Tilton*, 2013 WL 5670869, *3 (E. D. Cal. 2013); *see also Parthemore v. Col*, 221 Cal. App. 4th 1372, 1376 (Cal. Ct. App. 2013) (California courts emphasize that a "[p]laintiff's obligation to exhaust the administrative remedies available to prisoners . . . is independent of the obligation to comply with the Government Claims Act."). Further, as explained earlier, the cancellation of Anderson's inmate appeal was not improper.[7] The state law claims are dismissed.

Anderson does not actually concede that he did not present the claims to the Board.  If

_____

[7]If the cancellation of the inmate appeal did excuse Anderson's non-compliance with California's Government Claims Act, it would only do so with regard to the strip search because that was the subject of the cancelled appeal.

he did present his claims to the Board, he may repeat his state law claims in his amended complaint, but only if he also pleads that he has exhausted state court remedies for them.

### 3.     Request For Injunctive Relief

The parties agree that the injunctive relief requests have been made moot by Anderson's release from prison.  Accordingly, the injunctive relief requests are dismissed.

### C.     Scheduling

Anderson has been released from custody and now resides in San Bernardino, California. It is not clear whether he is on parole and, if so, whether that affects his ability to travel.  The court wants this information for scheduling purposes in the event this case progresses beyond the pleading stage.  Anderson must provide the following information to the court no later than **August 15, 2014**:  (1) if Anderson is not on parole, he should so inform the court; and (2) if Anderson is on parole, he should check with his parole agent to learn whether he needs a court order to travel to San Francisco for any trial or settlement conference that might occur in this case, and then provide that information to the court.

Anderson also is informed that he will need to make his own travel arrangements and pay for his own travel and lodging for any trial or settlement conference.  Any trial and settlement conference in this case would be held in San Francisco.  The court does not pay for litigants' travel expenses, even where the litigant is indigent, because the expenditure of public funds on behalf of an indigent litigant is proper only when authorized by Congress.  *See United States v. MacCollom*, 426 U.S. 317, 321 (1976); *Tedder v. Odel*, 890 F.2d 210, 211 (9th Cir. 1989).

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment and to dismiss is GRANTED.  (Docket # 22, # 28.)

Defendants are entitled to judgment as a matter of law on the affirmative defense that Anderson failed to exhaust administrative remedies for his claims regarding the strip search

United States District Court
For the Northern District of California

1  before filing this action.  The claims pertaining to the strip search are dismissed without

2  prejudice to him filing a new action.

3  The complaint is dismissed for failure to state a claim for the reasons discussed in this

4  order. As discussed in this order, there are some pleading problems and possibly some

5  insurmountable obstacles to Anderson's due process, retaliation and state law claims.  However,

6  as it cannot be said with complete certainty that Anderson cannot cure the problems discussed

7  in this order, leave to amend the due process, retaliation and state law claims is granted.  In his

8  amended complaint, plaintiff should not allege his strip search claims.

9  Anderson must file an amended complaint no later than **August 15, 2014**, and must

10  include the caption and civil case number used in this order and the words AMENDED

11  COMPLAINT on the first page.  Anderson is cautioned that his amended complaint must be a

12  complete statement of his claims.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir.

13  2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not

14  require that they be repled in a  subsequent amended complaint to preserve them for appeal. But

15  for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.").

16  Failure to file the amended complaint by the deadline will result in the dismissal of the action.

17  IT IS SO ORDERED.

18  Dated: July 21, 2014                    _____
                                            SUSAN ILLSTON
19                                          United States District Judge

20

21

22

23

24

25

26

27

28